FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 13, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VANDERVERT CONSTRUCTION, INC., | No. 2:21-CV-00197-MKD |
| Plaintiff/Counter-Defendant, | ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ALLIED WORLD SPECIALTY INSURANCE COMPANY (F/K/A DARWIN NATIONAL ASSURANCE COMPANY), and WESTCHESTER FIRE INSURANCE COMPANY, | ECF No. 50 |
| Defendants/Counter-Claimants. | |

Before the Court is Defendants Allied World Specialty Insurance Company ("Allied World") and Westchester Fire Insurance Company's ("WFIC") Motion for Summary Judgment, ECF No. 50. On December 13, 2022, the Court held a hearing on the motion. ECF No. 67. Richard T. Wetmore appeared on behalf of Plaintiff Vandervert Construction, Inc. ("Vandervert"). Michael E. Ricketts appeared on behalf of Defendants Allied World and WFIC (collectively "Defendant Insurers").

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

Vandervert brings claims of breach of contract, negligence, bad faith, and violations of Washington State's Insurance Fair Conduct Act ("IFCA") and Consumer Protection Act ("CPA") against Defendant Insurers, related to their denial of its insurance claim. ECF No. 1-2. Vandervert seeks declaratory judgment in its favor, as do Defendant Insurers. ECF No. 3 at 14-15.

Defendant Insurers seek summary judgment on Vandervert's claims, arguing that their denial of coverage was proper. ECF No. 50 at 35-36. The parties are awaiting the results of the Court's *in camera* review of large number of documents. *See* ECF Nos. 24, 44. As explained below, the majority of Defendant Insurers' claims can be resolved without reliance upon those documents. Defendant Insurers' Motion for Summary Judgment is **GRANTED IN PART** and the Court **RESERVES RULING** on the remaining claims**.**

## BACKGROUND

The undisputed relevant facts are as follows. On July 15, 2015, Vandervert entered into a construction contract with Washington Square Hotel Holdings, Inc. ("WSHH") for construction of the Bellevue Hilton Garden Inn Hotel in Bellevue, Washington (the "Project"). ECF No. 51 at 2 ¶ 2; ECF No. 56 at 2 ¶ 1; *see* ECF No. 53-1 (the contract). WSHH procured insurance coverage for the Project from Defendant Insurers, each to cover 50%, with policies effective July 14, 2015. ECF No. 1-2 at 5 ¶ 12; ECF No. 3 at 3-4 ¶ 12; ECF No. 51 at 2 ¶ 3. Allied World issued

Policy No. 0309-7022, *see* ECF No. 53-3 ("Allied World Policy"); WFIC issued

Policy No. I08877099 001, *see* ECF No. 53-4 ("WFIC Policy").  Allied World's

policy "covers direct physical loss . . . subject to the same [terms] as are contained

in . . . the 'Lead Policy[.]" ECF No. 53-3 at 13 ¶ 6.  The WFIC Policy is identified

as the "Lead Policy."  *Id.*  ECF No. 53-3 at 13 ¶ 6.

WFIC's Policy provides that Defendant Insurers would "pay for direct

physical *loss* to Covered Property from any of the Covered Causes of *Loss*."  ECF

No. 53-3 at 24 ¶ A.1 (emphasis in original).  "Covered Property" includes property

intended to become part of the hotel to be constructed and temporary structures on

site.  ECF No. 53-3 at 18 ¶ II, 24 ¶ A.1.a.  "Covered Causes of *Loss*" include "risks

of direct physical loss to the Covered Property, except those causes of loss listed in

the Exclusions."  ECF No. 53-3 at 25 ¶ 3.

WFIC's Policy provides, through a separate endorsement form, that all of

the "Exclusions" are preceded with the following language:

> We will not pay for loss or damage caused by any of the excluded
> events described below.  Loss or damage will be considered to have
> been caused by an excluded event if the occurrence of that event:
>
> 1.  Directly and solely results in loss or damage; or
>
> 2.  Initiates a sequence of events that results in loss or damage,
>     regardless of the nature of any intermediate or final event in that
>     sequence.

ECF No. 53-4 at 6 ¶ D.  One such "excluded event" is:

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 3

g. Rain, sleet, ice or snow, all whether drive[n] by wind or not, entering the interior of any Covered Property, unless:

1) The exterior of Covered Property is complete; and

2) Only if the exterior of Covered Property first sustains loss by a Covered Cause of Loss, through which rain, sleet, ice or snow enters.

The exterior of Covered Property is complete only when it has been constructed to a point that it is fully weather resistant and all of the final components of the exterior of the structure and its systems have been completely and permanently installed. The final components include but are not limited to:

1) The roof and roof drainage systems;
2) Exterior walls including siding;
3) Windows;
4) Doors;
5) Vents and ventilation systems;
6) Mechanical and electrical systems.

ECF No. 53-3 at 30-31 ¶ g.

From October 13, 2016, to October 18, 2016, nearly 4.5 inches of rainfall fell on the still-incomplete Project's roof, accounting for nearly half of the 10 inches in total in the month of October. ECF No. 56 at 3-4 ¶¶ 10, 12; ECF No. 63 at 3-4 ¶¶ 7, 9. Water leaked from the six-story roof into the interior of the structure, as far down as the subterranean parking garage. ECF No. 56 at 4 ¶¶ 14-16; ECF No. 57 at 2-3 ¶¶ 4-5; ECF No. 63 at 4 ¶¶ 11-13; *see* ECF No. 59 (attaching video exhibits). Rain in November caused additional water intrusion. ECF No. 56 at 4 ¶ 16; ECF No. 63 at 4 ¶ 13.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4

On January 23, 2017, WSHH submitted a claim for the loss sustained in these events to Defendant Insurers.  ECF No. 56 at 7 ¶ 29; ECF No. 63 at 6 ¶ 26.  Defendant Insurers denied coverage.  ECF No. 51 at 10 ¶ 30; ECF No. 53 at 3-4, 3 n.2; ECF No. 56 at 7 ¶ 30; ECF No. 63 at 7 ¶ 30.  On April 27, 2018, Vandervert, now undergoing receivership in the Spokane County Superior Court and through special counsel to the Receiver, filed a claim with the Defendant Insurers for its losses from the same events.  ECF No. 56 at 8 ¶ 34; ECF No. 63 at 7 ¶ 31.  On November 26, 2019, Defendant Insurers issued a preliminary claim denial.  ECF No. 56 at 12 ¶ 52; ECF No. 63 at 8 ¶ 49.

Before Defendant Insurers provided any "final coverage determination[,]" ECF No. 56 at 14 ¶ 65; ECF No. 63 at 10 ¶ 62, Vandervert, on May 14, 2021, initiated this lawsuit in Spokane County Superior Court, Case No. 21-2-01306-32.  ECF No. 1 at 1-2; *see* ECF No. 1-2.  Defendant Insurers filed a Notice of Removal on June 21, 2021.  *See* ECF No. 1.  On July 12, 2021, Defendant Insurers filed an Answer and Counterclaim.  *See* ECF No. 3.

## SUMMARY JUDGMENT STANDARD

A district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906

(9th Cir. 2019).  "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor."  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the portions of the record and the evidence that demonstrate the absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 323 (quoting former Fed. R. Civ. P. 56(c)).  A moving party who does not bear the burden of persuasion at trial will succeed by producing evidence that negates an essential element of the non-moving party's claim or defense or showing that the non-moving party does not have enough evidence to prove an essential element.  *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

After the moving party has satisfied its burden, to survive summary judgment, the non-moving party must demonstrate with evidence on the record, "specific facts" showing that there is a genuine dispute of material fact for trial.  *Celotex*, 477 U.S. at 324.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]"  *Anderson*, 477 U.S. at 252.

1    The court "must view the evidence in the light most favorable to the

2    nonmoving party and draw all reasonable inference in the nonmoving party's

3    favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).  "Credibility

4    determinations, the weighing of the evidence, and the drawing of legitimate

5    inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*,

6    477 U.S. at 255.

7                                    **DISCUSSION**

8        Defendant Insurers argue that summary judgment is appropriate because

9    Vandervert's losses are excluded from coverage "by the plain and unambiguous

10   language" of the Policies.  ECF No. 50 at 20.  Defendant Insurers point to the

11   "Rain Exclusion," the full text of which is recited above, for their conclusion that

12   the Policies exclude "any loss caused by rain or snow entering the interior of the

13   Covered Property, unless '[t]he exterior of Covered Property is complete,' and then

14   only if the exterior is first damaged by a Covered Loss through which rain or snow

15   enters." ECF No. 50 at 20.  In response, Vandervert argues that "'water damage'

16   and 'the accumulation of water from any source' are separate and distinct causes of

17   loss from 'rain' (an excluded peril)."  ECF No. 55 at 9.

18

19

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 7

The dispute is one of contract interpretation.  The Court first addresses principles of insurance contract interpretation,[1] then the "Rain Exclusion,'" and concludes with Vandervert's remaining extra-contractual claims.

## A. Interpretation of Insurance Contracts

"Interpretation of an insurance contract is a question of law[.]"  *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005); *see Vision One, LLC v. Phila. Indem. Ins. Co.*, 276 P.3d 300, 305 (Wash. 2012).  "Courts in Washington construe insurance policies as the average person purchasing insurance would, giving the language a fair, reasonable, and sensible construction."  *Vision One*, 276 P.3d at 305 (quotations omitted).  "Where a term is undefined, it is assigned its ordinary meaning."  *Id.* at 306.  "[I]f the policy language is clear and unambiguous, [the court] must enforce it as written[.]"  *Quadrant*, 110 P.3d at 737.  "[A] clause is

---

[1] The parties do not dispute that Washington State law controls.  Indeed, "[w]hen a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law."  *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).  Here, as in *Dolson Cos. v. Bedivere Ins. Co.*, "[a]ll events transpired in Washington and the Plaintiff[]-insured[] [is] located in Washington, so Washington law governs the interpretation of the insurance policies at issue."  264 F. Supp. 3d. 1083, 1087 (E.D. Wash. 2017).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 8

1 ambiguous only when, on its face, it is fairly susceptible to two different

2 interpretations, both of which are reasonable." *Id.* "Ambiguities in the policy are

3 construed against the drafter-insurer." *Vision One*, 276 P.3d at 306.

4      There are, generally, two types of insurance policies: named-peril and all-

5 risk. *Id.* All-risk policies cover all possible risk of loss except for risks that are

6 specifically excluded. *Id.* Exclusions are considered in light of the policy as a

7 whole, *Quadrant*, 110 P.3d at 739, and exclusions should be construed "strictly

8 against the insurer." *Vision One*, 276 P.3d at 306.

9      "The court determines coverage by characterizing the perils contributing to

10 the loss, and determining which perils the policy covers and which it excludes."

11 *Sunbreaker Condominium Assn. v. Travelers Ins. Co.*, 901 P.2d 1079, 1082 (Wash.

12 Ct. App. 1995) (citing *Kish v. Ins. Co. of N. Am.*, 883 P.2d 308, 311 (Wash. 1994)).

13 "[C]haracterization of perils focuses on whether the events are contractually

14 distinct, with reference to specific policy language and the perils allegedly

15 involved in the particular factual setting." *Sunbreaker*, 901 P.2d at 1083.

16      The Policies at issue, here, cover "risks of direct physical loss to the Covered

17 Property, except those causes of loss listed in the Exclusions." ECF No. 53-3 at 25

18 ¶ 3. The Policies are therefore "all-risk" policies, so the Court turns to the

19 exclusions to determine whether the causes of Vandervert's losses are explicitly

20 excluded.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 9

**B. The Scope of the Policy Coverage and the Rain Exclusion**

The Policies provide that the Defendant Insurers "will not pay for loss or damage caused by any of the excluded events[.]"  ECF No. 53-4 at 6 ¶ D.  The list of excluded events include "[r]ain, sleet, ice or snow, all whether drive[n] by wind or not, entering the interior of any Covered Property[.]"  ECF No. 53-3 at 30-31 ¶ g.

The Rain Exclusion provides that damage from rain, sleet, ice, or snow would be covered if the "exterior of Covered Property is complete" and the exterior of the Covered Property sustains a covered loss.  ECF No. 53-3 at 30-31 ¶ g.  Vandervert does not contend that the exterior of the Project was complete and admits that the Project had only "the first layer" of the roofing system installed and relied upon "temporary water pumps" to drain the flat roof while permanent roof drains were under construction.  ECF No. 56 at 2-4 ¶¶ 4-5, 13.

Vandervert argues that the Policies' terms anticipate a peril distinct from "rain."  Specifically, it asserts that rain accumulating on the roof, which it refers to as "ponded water," ECF No. 55 at 11, is not rain within the Polices' definition.

Vandervert derives its interpretation principally from two places in the Policies.  The first is the Policies' definition of "water damage," which is "any loss from water except loss caused by or resulting from *flood*."  ECF No. 53-3 at 35 ¶ F.9 (emphasis in original).  Flood, defined as a "a general and temporary condition

during which the surface of normally dry land is partially or completely inundated," is an excluded event.  ECF No. 53-3 at 30 ¶ B.1.f, 34 ¶ F.5.  Second, the Policies, in addition to defining "flood," explicitly remove from that definition "the accumulation of water from any source on a roof or other surface of a building, dwelling or structure."  ECF No. 53-3 at 34 ¶ F.5.  Therefore, Vandervert argues that loss from water damage is anticipated and *not* excluded, and while loss from flood is anticipated and *excluded*, loss from "the accumulation of water from any source on a roof" is anticipated and *not* excluded.  And, consequently, the Rain Exclusion "is irrelevant to the facts in this case."  ECF No. 55 at 11.

Vandervert's interpretation of the Policies' terms is not reasonable.  The definition of "water damage" cannot be said to create a covered peril distinct from rain.  As Vandervert itself explains, the Policies are "all-risk," therefore all risk is covered; Defendant Insurers are saved from liability only if the contract excludes a particular peril.  ECF No. 55 at 7; *Vision One*, 276 P.3d at 306.  If the Policies explicitly required a peril be covered, certainly such a clause would require coverage.  No such clause for water damage appears in the Policies, only a definition.  ECF No. 53-3 at 35 ¶ F.9.  Other clauses in the Policies reference water damage and rely upon that definition.[2]

---

[2] For example, the Policies exclude coverage for losses caused by fungus.  ECF

1    Further, the inclusion of a definition of "water damage" cannot be

2   reasonably read to override the Rain Exclusion.  Similarly, the Policies' definition

3   of flood, excluding the "accumulation of water from any source on a roof," cannot

4   be reasonably read to override the Rain Exclusion.  ECF No. 53-3 at 34 ¶ F.5.  The

5   flood exclusion and the Rain Exclusion are presented in the contract as co-equals,

6   one's definition cannot be said to cancel-out the other.

7    An average purchaser of insurance reading the Policies would reach the

8   heading "Exclusions," and understand that loss caused by the events that followed

9   were not covered.  Rain entering the interior of the Property through an incomplete

10  roof is explicitly excluded by the Policies, and loss resultant therefrom is not

11  covered simply because "water damage" and "accumulated water" are mentioned

12  elsewhere in the Policies.  Indeed, it strains rational thought to imagine what

13  damage rain may cause other than "water damage" or without rain first

14  "accumulating" to some extent.

15

16  No. 53-3 at 30 ¶ B.1.h.  But, "if *fungus* . . . results in . . . *water damage*, we will

17  pay for *loss* caused by that peril."  ECF No. 53-5 at 17 ¶ B.1.h (emphasis in

18  original).  Water damage, under the provided definition, is loss from water except

19  loss from flood.  ECF No. 53-3 at 35 ¶ F.9.  Therefore, if fungus resulted in water

20  damage, it would be covered.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 12

1    Vandervert's interpretation aside, the Court must determine the scope of the

2    Rain Exclusion.  "Rain" is undefined, so the court assigns the term a "plain,

3    ordinary, and popular meaning."  *Kish*, 883 P.2d at 312.  Merriam-Webster defines

4    rain as "water falling in drops condensed from vapor in the atmosphere[,]" "the

5    descent of this water[,]" and "water that has fallen as rain[.]"  Rain, Merriam-

6    Webster, https://www.merriam-webster.com/dictionary/rain#dictionary-entry-1

7    (last visited December 19, 2022).  Further, the rain must "enter[] the interior" of

8    the covered property for the Rain Exclusion to take effect.  ECF No. 53-3 at 30-31

9    ¶ g.

10    The remainder of the Rain Exclusion provides some context, as well.  The

11    Rain Exclusion does not apply where the exterior of the Property "is fully weather

12    resistant and all of the final components of the exterior of the structure and its

13    systems have been completely and permanently installed."  ECF No. 53-5 at 18 ¶

14    B.2.g.  "[F]inal components" include "roof and roof drainage systems;" "[e]xterior

15    walls including siding;" and "[w]indows[.]"  ECF No. 53-5 at 18 ¶ B.2.g.  The

16    Policies described the Project as a "ground up construction of a new hotel[,]" so

17    the Policies anticipate perils pre- and post-exterior completion.  ECF No. 53-5 at 5.

18    The plain text of the Rain Exclusion demonstrates that the insured should

19    not expect coverage for losses resulting from rain entering incomplete or exposed

20    property.  The requirement that permanently-installed drainage systems are

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 13

required before the Rain Exclusion would permit coverage is a clear indication that

the Rain Exclusion excludes some form of water damage.  In sum, the scope of the

Rain Exclusion prevents coverage for losses resulting from rain when the rain

enters the interior of covered property, prior to that property's weatherproofing—

including losses from water damage.

### C. Characterizing the Perils

The Court must now "characterize" the peril that caused Vandervert's losses

to determine whether the peril is within the scope of coverage.  *Kish*, 883 P.2d at

311-12.

Vandervert presents evidence of the cause of its losses in the form of

National Oceanic and Atmospheric Administration records, which indicate heavy

rain in October and November of 2016.  ECF No. 58-4.  Vandervert offers the

Declaration of Tim Stulc, owner, President, and Chief Executive Officer of

Vandervert, for the proposition that the Project "experienced a number of

substantial water intrusion events," that temporary pumps failed and "allowed the

water to pond on the roof, where it eventually leaked through penetrations in the

roof and the Carlisle vapor barrier roofing membrane."  ECF No. 57 at 3-4 ¶¶ 11-

13.  Vandervert highlights an email from Ron Keleman, an Allied World Vice

President, where even he acknowledges that "water would pool on peel and stick

layer and flow into building."  ECF No. 58-32 at 2.  Vandervert characterizes the

1  perils contributing to its loss as "water intrusion events," "water flowing into the

2  building after having first pooled on the roofing membrane[,]" and "ponded

3  water." ECF No. 55 at 17, 21, 26.

4         The crux of Vandervert's argument is that the water at issue was no longer

5  "rain" when it intruded into the property. Vandervert makes the metaphysical

6  assertion that "rain" is no longer "rain" after it accumulates on a surface. Indeed,

7  snow falling from the sky is snow, and it remains snow after landing on the

8  ground. Rain, however, becomes a "puddle" or a "pond." Is "ponded water" still

9  "rain?"

10        The Court is to take the position of an "average person purchasing

11  insurance[.]" *Vision One*, 276 P.3d at 305. As the Washington Supreme Court has

12  instructed, "[a]n insured may not avoid a contractual exclusion merely by affixing

13  an additional label or separate characterization to the act or event causing the loss."

14  *Kish*, 883 P.2d 308, 311 (Wash. 1994).

15        Vandervert avoids the question of how the water that caused its losses was

16  delivered to the Project so that it may pool, pond, flow, and intrude. The inevitable

17  conclusion is simple: it rained. Vandervert's invention of a separate peril would

18  vitiate all meaning from the Rain Exclusion. While the Court is to construe

19  ambiguities against Defendant Insurers, it cannot create ambiguity where there is

20  none. *Quadrant*, 110 P.3d at 737.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 15

1        Because the Court's analysis ends at the "language of these policies,"

2   comparing this case to others has limited utility.  *Kish*, 883 P.2d at 311.  However,

3   Vandervert relies heavily upon *Fidelity Co-op Bank v. Nova Cas. Co.*, so the Court

4   will address it briefly.  726 F.3d 31 (1st Cir. 2013).  In that case, a building in

5   Massachusetts was insured under an all-risk policy that covered "water or water-

6   borne material, that backs up or overflows from a sewer, drain or sump," and

7   contained an addendum covering loss attributable to "flood, meaning a general and

8   temporary condition of partial or complete inundation of normally dry land areas

9   due to:  the unusual or rapid accumulation or runoff of surface waters from any

10  source."  *Id.* at 33 (alterations omitted).  That policy had a "rain limitation" similar

11  to the Rain Exclusion at issue, here, excluding from coverage loss in "the interior

12  of the building caused by or resulting from rain, whether driven by wind or not,

13  unless the building first sustains damage by a Covered Cause of Loss to its roof or

14  walls through which the rain enters."  *Id.* at 34 (alterations omitted).

15        The building suffered a storm, a great amount of rain fell, overwhelmed the

16  roof's drainage system,[3] submerged two skylights, and water leaked into the

17

18  [3] Vandervert sporadically raises "inadequate and/or defective water pumps which

19  fail to drain ponded water" as a distinct peril.  *See, e.g.*, ECF No. 55 at 17.  In

20  *Nova*, an addendum to the policy explicitly deleted as an exclusion "[w]ater . . .

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 16

building.  *Id.* at 33-34.  The First Circuit found that "the ponded water on the roof of the property here was surface water" and not "rain" excluded by the "rain limitation."  *Id.* at 40.  Therefore, the entry of the water into the interior of the building was covered.  *Id.*

Vandervert fails to address the key inquiry in *Nova*.  The policy there covered flood damage but excluded rain damage, a dichotomy the court described as "unusual relative to the cases cited by the parties."  *Nova*, 726 F.3d at 37.  The fine line between "flood" or "surface water," and "rain" was particularly at issue. Here, flood and rain are both excluded perils.  As explained above, Vandervert's attempt to raise "water damage" and "accumulated water from any source" as distinct perils created by the Policies' plain terms is not a sound interpretation.

─────────────────────

that backs up or overflows from a . . . drain."  726 F.3d at 38.  Because that exclusion was deleted, the policy was reasonably read to explicitly cover that event as a distinct peril.  Further, the building was complete, and, had the drain been effective, there would be no damage.  *Nova*, 726 F.3d at 38.  The policy and facts in *Nova* required the conclusion that a blocked or inadequate roof drain was a separate peril.  The same cannot be said, here, where the Rain Exclusion wholly excludes rain damage prior to the completion of a permanently installed drainage system, and the Project was an exposed and incomplete construction site.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 17

Here, the Policies exclude losses from rain entering into an incomplete roof, there is no similar "surface water" coverage that the average purchaser of insurance would anticipate.

The parties also discuss, at length, *Kish*, a Washington Supreme Court case. 883 P.2d 308.  There, homes were inundated when excessive rainfall overtopped dikes surrounding the Stanwood sewage lagoon.  *Id.* at 309.  The policy at issue would cover rain damage, but not flood damage.  *Id.* at 311.  The court had to decide whether the historic rainfall was a distinct peril from "flood."  *Id.*  The court found that "the average purchaser of insurance would expect that the term 'flood' would encompass rain-induced flood."  *Id.* at 312.  The contract at issue, here, leads to a similar conclusion.  The average purchaser of insurance would expect that the term "rain" would encompass "ponded water" on a roof that was, moments prior, falling from the sky.

Defendant Insurers' denial of coverage was appropriate.  The Court grants summary judgment on Vandervert's breach of contract claim.

**D. Vandervert's Remaining Claims**

Vandervert's remaining claims allege bad faith, negligence, and violations of the IFCA and CPA.  The Court addresses each in turn.

*1. Bad Faith Claim*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 18

1    "In order to establish bad faith, an insured is required to show the breach

2  was unreasonable, frivolous, or unfounded."  *St. Paul Fire & Marine Ins. Co. v.*

3  *Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008).  "If the insurer denies coverage

4  based on a reasonable interpretation of the policy, it does not act in bad faith."

5  *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 335 (Wash. 2002).  Defendant Insurers'

6  denial of coverage was premised upon a reasonable and, as explained above,

7  correct interpretation of the policy.  The denial of coverage cannot support

8  Vandervert's bad faith claim.

9    Vandervert highlights the length of time between its filing the claim and the

10  Defendant Insurers' preliminary decision, and the lack of a final decision.  ECF

11  No. 55 at 23-25.  "[D]elay does not constitute bad faith unless it is due to a

12  frivolous and unfounded reason."  *Rizzuti v. Basin Travel Serv.*, 105 P.3d 1012,

13  1021 (Wash. Ct. App. 2005).  "'Whether an insurer acted in bad faith is a question

14  of fact,' which can be decided on summary judgment only if reasonable minds

15  could not differ in finding the insurer's conduct unreasonable."  *Rushforth Constr.*

16  *Co. v. Wesco Ins. Co.*, No. C17-1063-JCC, 2018 WL 1610222 at *4 (W.D. Wash.

17  Apr. 3, 2018) (citing *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003)).

18  "The nonmoving party may not rely on speculation, argumentative assertions, or

19  unsupported affidavits."  *Rizzuti*, 105 P.3d at 1019.

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 19

1         Vandervert filed its claim April 27, 2018.  ECF No. 56 at 8-10 ¶¶ 34-46;

2    ECF No. 63 at 7 ¶¶ 31-43.  Vandervert admits that delay from at least April 27,

3    2018, to January 30, 2019, was due to Vandervert's receivership proceedings,

4    which made the compilation of relevant information difficult.  ECF No. 56 at 9 ¶

5    40-42; ECF No. 53-8 at 26-27.  The evidence indicates that the delay continued to

6    May 14, 2019, due to some confusion as to how files should be delivered.  ECF

7    No. 58 at 6-7 ¶¶ 23-24.  And, for some unexplained reason, on August 20, 2019,

8    Vandervert sent supplemental records.  ECF No. 58 at 7 ¶ 25.

9         On November 26, 2019, the Defendant Insurers issued a preliminary denial

10   which emphasized that they have not taken a final position.  ECF No. 53-8 at 32.

11   Vandervert substantively responded to the denial on March 27, 2020.  *See* ECF No.

12   13-5.  In April and May of 2020, Vandervert's counsel sent emails to Defendant

13   Insurers seeking a response, and Defendant Insurers' counsel indicated

14   investigation was ongoing due to new developments.  ECF No. 58-30; ECF No.

15   58-31.  On October 8, 2020, Defendant Insurers requested more information and

16   documents, but indicated that they had not departed from their preliminary

17   determination.  ECF No. 53-9 at 6-9.  On December 14, 2020, Vandervert provided

18   supplement information and documents.  *See* ECF No. 58-33.  Vandervert's

19   counsel requested updates in February of 2021.  ECF No. 58-34.  Defendant

20   Insurers' counsel did not substantively respond.  ECF No. 58-34.  On March 11,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 20

2021, Vandervert sent Defendant Insurers notice of its intent to file this lawsuit. ECF No. 58-35.

Although Vandervert claims that the delay from 2018 to 2021 is the fault of the Defendant Insurers, the undisputed evidence shows that a significant portion of that delay is owed to Vandervert. The delay attributable to the Defendant Insurers prior to their preliminary denial is a matter of months, not years. The same is true of delay following Vandervert's March 2020 response to the preliminary denial through the filing of the lawsuit. The undisputed evidence shows a complicated investigation involving many documents.

In *Rushforth*, the court found unreasonable an insurers' inexplicable ten-month delay, during which it did not communicate with the insured, and which ended only after the insured filed suit. 2018 WL 1610222 at *4-5. Comparatively, in *Ins. Co. of Pa. v. Highlands Ins. Co.*, the insurer delayed coverage for over a year due to debatable terms in a policy. 801 P.2d 284, 287 (Wash. 1990). The Court granted summary judgment for the insurer because "the delay throughout was related to [the insurer's] attempts—albeit clumsy—to resolve the coverage issue." *Id.*

The Court declines to consider whether Defendant Insurers' delay was motivated by a frivolous or unfounded reason at this time. The parties are awaiting

1    the Court's determination of privilege for thousands of pages of documents

2    submitted for *in camera* review.  The Court reserves ruling on this issue.

3        *2.  IFCA Claim*

4        Vandervert's First Cause of Action arises under the IFCA.  ECF No. 1-2 at

5    9.  The IFCA "creates a cause of action for unreasonable denials of coverage and

6    also permits treble damages in some circumstances."  *Perez-Crisantos v. State*

7    *Farm Fire & Cas. Co.*, 389 P.3d 476, 482 (Wash. 2017) (emphasis omitted).  The

8    statute requires that an insured be unreasonably denied a claim for coverage.  *See*

9    *id*; RCW 48.30.015(1)-(3).  As found above, Vandervert was not unreasonably

10   denied coverage.  Therefore, Vandervert cannot succeed on its IFCA claim as a

11   matter of law.  The Court grants summary judgment as to the IFCA claim.

12       *3.  Negligence and CPA Claims*

13       Vandervert's Fourth Cause of Action is entitled "Negligence," and alleges

14   that "[t]he Insurers were in a fiduciary relationship with Vandervert and were

15   under a duty to deal fairly with their insured[.]"  ECF No. 1-2 at 12 ¶ 58.  "A

16   breach of a fiduciary duty imposes liability in tort. . . .  In order to prevail, [the

17   plaintiff] must establish (1) the existence of a duty owed to them; (2) a breach of

18   that duty; (3) a resulting injury; and (4) that the claimed breach was the proximate

19   cause of the injury."  *Miller v. United States Bank*, 865 P.2d 536, 543 (Wash. Ct.

20   App. 1994).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 22

1    Vandervert's Fifth Cause of Action arises under the CPA.  The CPA

2    provides that "[u]nfair methods of competition and unfair or deceptive acts or

3    practices in the conduct of any trade or commerce are hereby declared unlawful."

4    RCW 19.86.020.  "A denial of coverage does not constitute an unfair or deceptive

5    act or practice as long as it is based on reasonable conduct of the insurer."  *Overton*

6    *v. Consol. Ins. Co.*, 238 P.3d 322, 330 (Wash. 2002).  For the same reason that the

7    Court declines to address summary judgment at this time on Vandervert's bad faith

8    claim, the Court declines to address summary judgment as to Vandervert's

9    Negligence and CPA claims.  There are a large number of documents undergoing

10   an *in camera* review that Vandervert may be entitled to discover.  If discovered,

11   Vandervert must be afforded the opportunity to review the documents for materials

12   relevant to bad faith, negligence, or the CPA.[4]

## CONCLUSION

14   For the reasons stated herein, the Court grants summary judgment as to

15   Vandervert's breach of contract claim and IFCA claim.  The Court reserves ruling

16   as to Vandervert's negligence and CPA claims.  The Court hereby enters

17   declaratory judgment as to the parties' rights under the Policies.

18   Accordingly, **IT IS ORDERED:**

---

[4] The Court anticipates concluding the review by February 3, 2023.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 23

1.     Defendants' Motion for Summary Judgment, **ECF No. 50**, is **GRANTED IN PART**.

2.     The District Court Executive is directed to enter **DECLARATORY JUDGMENT** in favor of Defendant Insurers and against Vandervert declaring as a matter of law that:

> a.   Defendants Allied World Specialty Insurance Company and Westchester Fire Insurance Company have no duty under the terms of Policy Nos. 0309-7022 or I08877099 001 to pay for Vandervert Construction, Inc.'s losses sustained from rain during the construction of the Bellevue Hilton Garden Inn Hotel in Bellevue, Washington.

**IT IS SO ORDERED.**  The District Court Executive is directed to file this Order and Judgment accordingly and provide copies to all counsel.

DATED January 13, 2023.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 24